UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00013-GNS

JASON STRADER, et al.,                                                                                           PLAINTIFFS

v.

MILTON MARSHALL, et al.                                                                                          DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Milton Marshall, Nell Marshall, and Resthaven Memorial Gardens, Inc.'s Motion to Dismiss. (DN 7). This motion is ripe for a decision, and for the reasons stated below, the Court **GRANTS** Defendants' Motion.

### I. BACKGROUND

Milton Marshall ("Milton") acquired Greenhills Memorial Gardens of Christian County, Inc. ("Greenhills") on December 20, 1978, and operated the company until he sold it to Plaintiffs Jason and Taunya Strader on July 20, 2012. (DN 1 at 4). Nell Marshall ("Nell") is Milton's wife, and Resthaven Memorial Gardens, Inc. ("Resthaven") is a cemetery in Clarksville, Tennessee owned by Milton. At the time of Plaintiffs' acquisition of Greenhills, an accounting firm[1] represented to Plaintiffs that Greenhills's trust funds were in full compliance with Kentucky law. (DN 1 at 2, 29, 31-32).

Plaintiffs allege in their Complaint that during Milton's ownership of Greenhills, an enterprise consisting of the Defendants carried out a number of schemes. (DN 1 at 5-9). The first is that Milton would allegedly write on a contract for sale of a preneed lawn crypt that the lawn

---

[1] Stone, Rudolph & Henry was initially a party to this action, but the Court has previously dismissed the claims against that firm with prejudice. (DN 21).

1

crypt had been installed at the time of sale, take the funds that by law had to be placed in trust following such a transaction for himself rather that place it in trust, and fail to install the lawn crypts for the buyers. (DN 1 at 5-6). The second is that Milton would allegedly sell a lawn crypt, but instead of placing a requisite amount from the sale into trust as required by law, he would retain the money himself.[2] (DN 1 at 6). The third scheme is that Milton would allegedly sell a mausoleum bed to customers listed as being in "Building F," but Building F was never registered with the Kentucky Attorney General's office as required, and indeed was never constructed. (DN 1 at 6-7). The final scheme recited alleges that Milton would use the names of individuals whose money was in trust as required, but who were still alive, in order to wrongfully withdraw money from the trustee bank which was supposed to release the funds after the purchaser of a crypt or bed died and his or her earthly remains were laid to rest as contracted. (DN 1 at 8-9). During this final scheme, Milton would also allegedly submit the name of a deceased person a second time in order to wrongfully withdraw additional monies from the trust. (DN 1 at 8-9).

As a result of these claimed schemes and in order for Greenhills to be in compliance with Kentucky law, Plaintiffs would need to place an additional $2,974,4499.00 in its trust. (DN 1 at 32). Plaintiffs request this amount, punitive damages, treble damages, and an order prohibiting Defendants from selling any capital asset with a value of $10,000.00 or more from Resthaven or Milton's home and yacht. (DN 1 at 32-33).

## II. STANDARD OF REVIEW

Motions pursuant to Fed. R. Civ. P. 12(b)(6) require the Court "to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as

---

[2] While somewhat unclear, the Court interprets this scheme to be different from the first scheme recited in that Milton actually installed the lawn crypts in the second scheme, where he did not in the first.

true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

### III. DISCUSSION

Defendants' motion rests primarily on one argument: that the Court lacks subject matter jurisdiction. (DN 7-1 at 1). The subparts of that argument are that the Court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as not all parties are diverse, and that the Court lacks subject matter jurisdiction under the Racketeer Influenced and Corrupt Organizations ("RICO") chapter of Title 18 as the requirements for such a claim have not been pleaded. (DN 7-1). Plaintiffs agree in their response that diversity jurisdiction is lacking (DN 18 at 5), leaving only the question of whether this Court has jurisdiction because of the presence of a properly pleaded RICO claim.

RICO provides for criminal penalties and civil remedies when it has been violated. 18 U.S.C. §§ 1962-64. Because it contains civil remedies, RICO is a "civil action[ ] arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331. Accordingly, a claim for civil remedies pursuant to RICO provides a jurisdictional basis for this Court to hear a civil action. *See Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 799-803 (6th Cir. 2012); *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 511 (6th Cir. 2010); *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008). The Court could then elect to exercise supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a), assuming that the state-law claims "form[ed] part of the same case or controversy." 28 U.S.C. § 1367(a).

"To state a RICO claim, a plaintiff must plead the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012) (internal quotation marks omitted) (citation

omitted). Defendants argue that Plaintiffs have failed to sufficiently plead the existence of an enterprise, with the result that a RICO claim has not been stated and this court lacks jurisdiction. (DN 7-1 at 4-5, 7).

For the purposes of RICO, "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity . . . ." 18 U.S.C. § 1961(4). The latter groups, called association-in-fact enterprises, have three characteristics: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009). Defendants argue that Plaintiffs have "fail[ed] to plead facts sufficient to show that [Defendants] functioned, acted, or made decisions together toward a common purpose." (DN 26 at 2).

Defendants' point is well-taken. Of the remaining three Defendants, "Nell Marshall" appears in the complaint in the case style, in the description of the parties, in the section describing jurisdiction and venue, in a bare allegation that she is a member of the enterprise, and never again. *See* (DN 1). "Resthaven Memorial Gardens" appears in the complaint in the case style, as an item in a list of things that Milton allegedly purchased or made payments on using funds gained from racketeering, in Plaintiffs' request for equitable relief in the form of an order to prohibit Milton from selling any capital asset with a value of more than $10,000 from Resthaven, and never again. (DN 1). All of the alleged racketeering actions alleged in Counts 1-1941, as well as the actions regarding an alleged inadequate bond and fraudulent concealment, name only Milton as an actor. *See* (DN 1).

"[A] plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law." *16630 Southfield*

*Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which in turn means that "the plaintiff plead[ed] factual content that allow[ed] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (citation omitted).

Plaintiffs have not provided sufficient factual matter to make a RICO claim against Defendants plausible on its face. Taking every fact in the complaint to be true, the complaint does not plausibly establish that Nell, Resthaven, and Milton functioned together toward a common purpose. A bare statement that Nell is a member of the enterprise is conclusory rather than factual. Indeed, Plaintiffs note that as to Nell, an amended complaint would be necessary. (DN 18 at 7). The statements regarding Resthaven do not appear to assert a claim at all; rather, it is simply listed as an interest allegedly wrongfully acquired by Milton from proceeds of racketeering. While Plaintiffs have included a large amount of factual matter regarding Milton, there are not sufficient factual allegations regarding Nell and Resthaven to make a plausible argument that they were members of Milton's alleged enterprise.

Additionally, Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "In complying with Rule 9(b), a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relief; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Leeds v. City of Muldraugh*, 174 F. App'x 251, 254 (6th Cir. 2006) (internal quotation marks omitted) (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir.

2003)). As recognized in *Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393 (6th Cir. 2012):

> When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. . . . . To allege a valid RICO claim, however, a plaintiff must show not only that the predicate act was a but for cause of plaintiff's injuries, but also that it was a proximate cause.

*Id.* at 404 (citations omitted) (internal quotation marks omitted).

While Plaintiffs have provided information about the customers allegedly harmed in the scheme (such as names, deed numbers, plots, and amounts paid) (DN 1-1; DN 1-2; DN 1-3, DN 1-4), they have not specified the statements which they contended are fraudulent. The statement that a letter confirming the false contract was sent to each alleged victim is not sufficient, nor is an allegation that Milton used the U.S. mail to make claims against the trustee bank. Additionally, no date or even a date range has been given for any of these letters. Thus, Plaintiffs have not satisfied the higher pleading standard of Rule 9(b).

Neither a RICO claim nor mail fraud has been properly pled as a predicate act, leaving this matter without a claim that has an independent basis for federal jurisdiction. "[A] federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims." *Brown*, 546 F.3d at 363 (citations omitted). *See Reynosa v. Shultz*, 282 F. App'x 386, 391 (6th Cir. 2008) ("Ordinarily, where all federal claims have been dismissed, federal courts should decline to exercise supplemental jurisdiction over state law claims." (citation omitted)); *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004) ("Generally, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." (alteration in original) (internal quotation marks omitted)); *Taylor v. First*

6

*Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (same).  In keeping with *Brown* and other binding case law, the Court declines to exercise jurisdiction over Plaintiffs' remaining state law claims.

## IV. <u>CONCLUSION</u>

For the forgoing reasons, Plaintiffs have failed to state a claim upon which relief can be granted. Accordingly, **IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss (DN 7) is **GRANTED**.

Greg N. Stivers, Judge
United States District Court

April 10, 2015

cc:    counsel of record